# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATSUE ELLIOTT, *et al.,*<br><br>                              Plaintiffs,<br><br>        v.<br><br>QF CIRCA 37, LLC, *et al.*,<br><br>                              Defendants. | Case No. 16-cv-0288-BAS-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**[ECF Nos. 46, 47]** |

Presently before the Court is Defendants QF Circa 37, LLC ("QF"), Versa CIC, LP ("Versa") and ConAm Management Corporation's ("ConAm") (together "Defendants") Rule 12(c) motion for judgment on the pleadings. (ECF Nos. 46, 47.) This case concerns whether the Defendants engaged in discriminatory housing practices on the basis of race, national origin, and disability, in connection with Plaintiff Natsue Elliott's apartment at the Versa at Civita complex ("Civita") in San Diego, California. The sole issue that Defendants raise is whether Plaintiff Linda Brown—the daughter and guardian of Plaintiff Natsue Elliott, who secured her mother's housing and regularly interacted with Defendants to request reasonable accommodations for her mother's disability—lacks standing to assert any claims in

this case. Plaintiff Brown has opposed the motion (ECF No. 58) and Defendants have replied. (ECF No. 65.) Defendants further request that this Court take judicial notice of certain records in connection with their motion. (ECF No. 48.) For the reasons stated herein, the Court grants in part and denies in part both Defendants' motion for judgment on the pleadings and request for judicial notice.

## I. BACKGROUND

### A. Factual Background

Plaintiff Linda Brown is the adult daughter and self-appointed guardian of Plaintiff Natsue Elliott, an 87-year old Asian-American who is handicapped and has Alzheimer's disease. (ECF No. 4, First Am. Compl. [hereinafter "FAC"] ¶¶4–6.) Plaintiff Elliott lives by herself in an apartment at Civita, a complex advertised as housing for senior citizens. (*Id*. ¶¶4, 15.) Plaintiff Brown arranged for Plaintiff Elliott's housing at Civita, and is often at Plaintiff Elliott's apartment to assist with her mother's day-to-day care. (*Id*. ¶¶5, 15.) Defendant QF owns and operates Civita, while Defendants Versa and ConAm serve as property managers of Civita. (*Id.* ¶¶8–11.)

The FAC alleges that the Defendants engaged in a pattern or practice of discriminating against disabled persons in the operation of Civita, including Plaintiff Elliott, on account of race, national origin, and handicap or disability. (*Id.* ¶14.) In April 2015, Defendants allegedly denied Plaintiff Brown's request for a physician-prescribed emotional support animal to reside in Plaintiff Elliott's apartment to assist in coping with her disability. (*Id.* ¶¶19–20.) During May and early June 2015, Defendants allegedly denied multiple requests for parking accommodations at Civita. (*Id.* ¶¶21–22, 28–30.) Defendants allegedly caused "no parking" signs to be erected at the curb in front of Plaintiff Elliott's apartment. (*Id.* ¶30.) During one incident, while Plaintiff Brown tried to park at the curb, an employee of the Defendants allegedly told Plaintiff Brown that she did not care Plaintiff Elliott had a disability and she was unwilling to make any disability accommodations in parking for Plaintiff

Elliott. (*Id.* ¶31.)

In July 2015, Plaintiff Brown also made multiple requests to Defendants for her mother to move to a one or two-bedroom apartment to permit a full-time live-in caretaker to assist Plaintiff Elliott with her disability. (*Id.* ¶¶32–34.) After three weeks with no response, an employee of the Defendants informed Plaintiff Brown that Defendants' legal department had approved her mother's transfer to the next available one-bedroom apartment, but additional paperwork would be necessary for a two-bedroom. (*Id.* ¶35.) In September 2015, Plaintiff Brown sought to have an employee of the Defendants sign a form needed to obtain a reasonable accommodation from the San Diego Housing Association and release her mother from her lease. (*Id.* ¶39.) When the employee saw the form, she allegedly claimed that a two-bedroom unit would become available within a month. (*Id.*) However, no such unit was actually available and Plaintiff Elliott moved into a one-bedroom at Civita, above a tenant who allegedly engaged in disruptive behavior about which Defendants were aware. (*Id.* ¶¶39–42.)

In mid-October 2015, Plaintiff Elliott filed a housing discrimination complaint with California's Department of Fair Employment and Housing ("DFEH") against Defendants. (*Id.* ¶¶43–44.) At the beginning of November 2015, an employee of the Defendants told Plaintiff Brown that her mother would be able to transfer to a two-bedroom unit effective January 4, 2016. (*Id.* ¶47.) Nearly a month later, however, two other employees of the Defendants allegedly denied the transfer in retaliation for Plaintiff Elliott's DFEH complaint. (*Id.* ¶¶49–50.) Further, Defendants allegedly served a Notice of Lease Violation on Plaintiff Elliott for noise violations, also in retaliation for her DFEH complaint. (*Id.* ¶51.) Plaintiffs allege that they have suffered economic loss and emotional distress, including humiliation, embarrassment, and mental anguish, as a result of Defendants' practices. (*Id.* ¶52.)

**B.    Procedural History**

Plaintiffs Elliott and Brown brought suit against Defendants on February 3,

2016, raising claims under the Fair Housing Act ("FHA"), 42 U.S.C. §§3601 *et seq.*, California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§12927 and 12955 *et seq.*; the California Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code §§51 *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17204; and negligence. (ECF No. 1.) They subsequently filed the First Amended Complaint, with largely identical claims. (ECF No. 4.) On April 21, 2017, Defendants filed their Rule 12(c) motion for judgment on the pleadings (ECF Nos. 46–47) and request for judicial notice (ECF No. 48). The Court now addresses both.

## II.    LEGAL STANDARDS

### A.    Rule 12 (b)(1)

When a defendant challenges the Article III standing of a plaintiff, Rule 12(b)(1) provides the appropriate standard because it is the court's subject-matter jurisdiction which is challenged. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Rule 12(b)(1) jurisdictional attacks can be either factual or facial. In a facial attack to the allegations contained in the complaint, a court accepts as true a plaintiff's allegations and draws all reasonable inferences in her favor. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual Rule 12(b)(1) attack which disputes the truth of the allegations, a court may look beyond the complaint to matters of public record without converting the motion into one for summary judgment and need not presume the truthfulness of the plaintiff's allegations. *Id.* Once a party has moved to dismiss for lack of subject matter jurisdiction, the opposing party bears the burden of establishing the Court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff carries her burden by putting forth "the manner and degree of evidence required" by the stage of the litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B.    Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A court ruling on

a Rule 12(c) motion applies the same standard used in a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 1996). The court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Id.* "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). It is the moving party's burden to demonstrate that both of these requirements are met. *Doleman v. Meiji Mut. Life Ins. Co*., 727 F.2d 1480, 1482 (9th Cir. 1984). If matters outside the pleadings are presented to and not excluded by the court, a Rule 12(c) motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d); *Hal Roach Studios, Inc*., 896 F.2d at 1550.

## III.  DISCUSSION

### A.  Request for Judicial Notice

The Court first addresses Defendants' request that this Court take judicial notice of certain documents. (ECF No. 48.) Defendants request judicial notice of: Plaintiff Elliott's DFEH Complaint, the DFEH Notice of Case Closure, a DFEH Closure Determination and Request for Additional Information, the complaints filed in this case, email records in the files of DFEH, and various records in the files of the San Diego Housing Commission ("SDHC"). (ECF No. 48.) As to all documents except the complaints, Defendants argue that the materials are "government documents" in the form of state and city administrative records, which are proper subjects of judicial notice. (*Id*.) Plaintiff Brown argues that the materials should be excluded pursuant to Federal Rule of Civil Procedure 12(d) because they are matters outside the pleadings. (ECF No. 58 at 10.) She does not challenge the documents' authenticity. The Court grants in part and denies in part Defendants' request.

The Court grants Defendants' request to take judicial notice of Plaintiff Elliott's DFEH Complaint, the DFEH Notice of Case Closure and a DFEH Closure

Determination and Request for Additional Information. (ECF No. 48, Exs. 1–3). In ruling on a Rule 12(c) motion, a may take judicial notice of matters in the public record without converting the motion into one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Federal Rule of Evidence 201(b) in turn allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Records and reports of administrative bodies are proper subjects of judicial notice. *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953); *see also United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008); *Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 904 n.3 (N.D. Cal. 2013) (taking judicial notice of DFEH complaint and DFEH right-to-sue letter). However, the Court will not take judicial notice of facts or conclusions contained in these documents regarding whether Defendants violated federal and state antidiscrimination laws. *See Lee*, 250 F.3d at 690 (judicial notice of public records is limited to the existence of the documents, not the truth of their contents where facts are disputed); *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1160 (C.D. Cal. 2011) (materials "implicat[ing] the key disputed factual allegations at issue in th[e] action . . . are not proper subjects of judicial notice" under Rule 201(b)). Further, the Court takes judicial notice of the Notice of Lease Violation served on Plaintiff Elliott (ECF No. 48-3 at 80) because although it is not an official record, it partially "forms the basis of" her FHA retaliation claim. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The Court denies the remainder of Defendants' request. The fact that the DFEH and the SDHC are administrative bodies "does not mean all evidence related to this case . . . fits within the judicial notice exception." *Id.* at 909. Save for the Notice of Lease Violation, the emails and documents purportedly from the files of the DFEH and the SDHC (ECF No. 48, Exs. 6–7) are not incorporated by reference

into the FAC, nor do they appear to be generally known within this Court's jurisdiction. *See Prime Healthcare Servs., Inc., v. Harris*, No. 16-cv-0078-GPS-AGS, 2017 WL 3525169, at *9 (S.D. Cal. Aug. 16, 2017). The Court also denies Defendants' request as it pertains to the original complaint and the FAC (ECF No. 48, Exs. 4–5) because the Court need not take judicial notice of filings already on its docket. *See Park Townsend, LLC v. Clarendon Am. Ins. Co*., No. 12-cv-04412-LHK, 2013 WL 3475176, at *5 (N.D. Cal. July 10, 2013).

### B. FHA Standing and the Zone of Interests Test

The Court first addresses Defendants' argument that Plaintiff Brown lacks standing to assert claims under the FHA.[1] In the FAC, both Plaintiffs Brown and Elliott raise FHA claims premised on Defendants' alleged discriminatory treatment on the basis of race, national origin, and handicap; alleged discriminatory statements reflecting a limitation or preference based on handicap; refusal to grant requests for reasonable accommodations for a person with a disability; and retaliation based on the exercise of a person's fair housing rights. (FAC ¶14.) This conduct is respectively prohibited by Sections 3604(b); 3604(c), 3604(f)(3)(B) and 3617 of the FHA. *See* 42 U.S.C. §§3604, 3617. Defendants argue that Plaintiff Brown lacks standing to assert FHA claims for two reasons: (1) Plaintiff Brown's alleged injuries are insufficient to confer standing and (2) even assuming the alleged injuries are sufficient, her interests fall outside the "zone of interests" test protected by the FHA. (ECF No. 47 at 8–9.) The Court addresses each argument in turn.

---

[1] The Court's analysis regarding FHA standing also implicates Plaintiff Brown's FEHA standing. The FEHA expressly provides that it shall not be "construed to afford to the classes protected under this [Act], fewer rights or remedies than the federal Fair Housing Amendments Act of 1988." Cal. Gov. Code §12955.6. To the extent Plaintiff Brown has standing under the FHA, she also has standing under the FEHA. *See Hous. Rights Ctr., Inc., v. Moskowitz*, No. CV 04-2266 PA (VBKx), 2004 WL 3738293, at *2 (C.D. Cal. Sept. 20, 2004); *Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1150 (C.D. Cal. 2001).

### 1. Article III Injury and FHA Standing

Defendants argue that Plaintiff Brown lacks the "distinct and palpable injury" necessary for FHA standing because the claims in this case are not based on discrimination against her, but rather against her mother. (ECF No. 47 at 8.) Defendants assert that Plaintiff Brown's alleged injury is witnessing discrimination against her mother, which, they argue, is not a cognizable injury-in-fact. (*Id.*) They further contend that Plaintiff Brown's visiting and assisting her mother are an insufficient basis for standing. (*Id.* at 9.) Plaintiff Brown argues that her alleged "emotional injuries" support her standing to assert FHA claims. (ECF No. 58 at 15 n.49, 17.) Because Defendants challenge whether Plaintiff Brown has asserted an injury sufficient to support her standing, this Court must turn to the Article III's constitutional standing requirements.[2] The Court finds that Plaintiff Brown has sufficiently alleged injuries resulting from Defendants' allegedly discriminatory housing practices to support her standing.

"Article III of the Constitution confines the federal courts to adjudicating actual cases or controversies." *Allen v. Wright*, 468 U.S. 737, 750–51 (1984). To satisfy the constitutional requirement of standing that arises from Article III, a plaintiff must allege the "irreducible minimum" of: (1) an injury in fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation, *i.e.*, the injury

---

[2] The Court construes Defendants' challenge to Plaintiff Brown's standing for lack of injury as a Rule 12(b)(1) challenge, which is the procedurally proper vehicle. *See White*, 227 F.3d at 1242 ("Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)"). The Rule 12(b)(1) challenge here is facial because Defendants' motion (ECF No. 47 at 4) states that this Court must accept as true all factual allegations in the FAC and construe them in the light most favorable to Plaintiff Brown. *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 779 n.2 (9th Cir. 2014) (determining that Rule 12(b)(1) challenge was facial because of defendant's representation that the district court was obligated to assume truth of the complaint's allegations).

is "fairly traceable to the challenged action of the defendant"; and (3) redressability, *i.e.* it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560−61 (internal citations and quotations omitted). This requirement ensures that the plaintiff has "such a personal stake in the outcome of the controversy so as to assure that concrete adverseness which sharpens the presentation of issues." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citation omitted). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice because the trial court presumes that such allegations embrace those specific facts necessary to support the claim. *Lujan*, 504 U.S. at 561.

"The existence of federal standing 'often turns on the nature and source of the claim asserted.'" *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). This Court's standing analysis turns to the nature and source of Plaintiff Brown's claims—the Fair Housing Act. The FHA provides that "an aggrieved person may commence a civil action" to challenge a discriminatory housing practice. *See* 42 U.S.C. §3613(a)(1)(A). The FHA further defines the term "aggrieved person" to mean "any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." *See* 42 U.S.C. §3602(i). Under these provisions, standing under the FHA "extend[s] to the full limits of Article III." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) [hereinafter "*Havens*"].

This view of FHA standing first emerged in *Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205 (1972) [hereinafter "*Trafficante*"]. In *Trafficante*, the Supreme Court interpreted standing under Section 3610(a) of the FHA to be "as broad[] as is permitted by Article III," relying on the Third Circuit's opinion in *Hackett v. McGuire Bros., Inc.*, 445 F.2d 442 (3d Cir. 1971). *See Trafficante*, 409 U.S. at 209. Section 3610(a) permits "an aggrieved person," i.e. "claim[ing] to be

injured by a discriminatory housing practice," to file a complaint with the Department of Housing and Urban Development and subsequently commence suit. *Id.* at 206 n.1. *Hackett* interpreted Title VII's analogous aggrievement provision in the context of employment discrimination to reflect a congressional intent that Title VII standing be construed as coextensive with Article III's requirements. *Id.* at 209 (citing *Hackett*, 445 F.2d at 446). The Supreme Court determined that the white and black tenant plaintiffs had standing under Section 3610(a) to file a complaint against their apartment complex owner for allegedly discriminating against non-whites. *Id.* at 208, 211. The Supreme Court found sufficient their allegations that the defendant's discriminatory housing practices deprived them of the social benefits and business and professional advantages of an integrated community, and caused embarrassment and economic damages from the stigma of being residents of a discriminatory apartment complex. *Id.* at 208. Subsequently, in *Gladstone, Realtors v. Bellwood*, 441 U.S. 91 (1979) [hereinafter "*Gladstone*"], the Supreme Court held that standing under Section 3612 similarly is "as broad as is permitted by Article III". *Id.* at 109 (quoting *Trafficante*, 409 U.S. at 209). The Supreme Court determined that although Section 3612, which permitted private suits to be brought directly in federal court, did not use the term aggrieved, it was an "alternative mechanism[]" to Section 3610 HUD complaints for enforcing the FHA. *Id.* at 104. Therefore, standing under Section 3612 was not limited to "direct victims" of alleged discriminatory housing practices, as the district court had concluded. *Id*. at 108–09. "As long as the plaintiff suffers actual injury as a result of the defendant's conduct, [s]he is permitted to prove that the rights of another were infringed." *Id*. at 103 n.9. In *Havens*, the Supreme Court reaffirmed that "the sole requirement for standing to sue under [the FHA] is the Art[icle] III minima of injury in fact: that the plaintiff allege that as a result of the defendants' discriminatory housing practices he has suffered a 'distinct and palpable injury.'" 455 U.S. at 372 (quoting *Warth*, 422 U.S. at 501).

In light of these decisions, the Ninth Circuit has instructed that plaintiffs suing

under the FHA "[are] judged under a very liberal standing requirement." *See Harris v. Itzhaki*, 183 F.3d 1043, 1049 (9th Cir. 1999). "[A]ny person harmed by discrimination, whether or not the target of the discrimination, can sue to recover for his or her own injury." *San Pedro Hotel v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998) (citing *Trafficante*, 409 U.S. at 212). Defendants' motion fails to grapple with the liberal standing requirement applied to plaintiffs suing under the FHA. In reply, while acknowledging that *Trafficante*, *Gladstone*, and *Havens* use "broad language" (ECF No. 65 at 4), Defendants contend that these precedents do not mean that any person claiming to be aggrieved has standing to pursue an FHA claim, (*id.* at 1.) This contention is at odds with the text of the FHA's suit enabling provisions and their interpretation.

The Court recognizes that standing in cases such as this one, in which Plaintiff Brown generally does not allege discrimination directly against her, is necessarily a more complicated matter. "An injury is not as readily identifiable—and thus standing issues arise—where the plaintiff alleges an injury as a result of discrimination against third persons." *Waterhouse v. City of Lancaster*, No. CV 12-00923 SJO (SHx), 2013 WL 8609248, at *8 (C.D. Cal. Mar. 13, 2013). Nevertheless, claims premised on third party discrimination are properly asserted where a plaintiff demonstrates that the defendant's discrimination resulted in a "genuine[] injury" to the plaintiff. *Id.* (citing *Gladstone*, 441 U.S. at 103 n.9).

Plaintiff Brown alleges that she suffered emotional injuries as a result of Defendants' allegedly discriminatory housing practices, including humiliation, embarrassment, mental anguish, and distress. (FAC ¶52.) Non-economic injuries may be a sufficient injury for the purposes of Article III standing. *See Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 486 (1982); *Gladstone*, 441 U.S. at 112 (stigmatic injuries). This includes "emotional harm (injury in fact) caused by the defendants'" conduct. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1109 (9th Cir. 2014). However, "the

psychological consequence presumably produced by observation of conduct with which one disagrees" is generally insufficient. *See Valley Forge*, 454 U.S. at 485–86 (the mere fact that plaintiffs were offended by a display of a lighted cross on public property could not confer standing); *Freedom from Religion Found. v. Zielke*, 845 F.2d 1463, 1467–68 (7th Cir. 1988) (psychological harm without altered behavior is insufficient). Without citing independent legal authority, at least two district courts in this Circuit have determined that allegations of merely witnessing discriminatory housing practices are insufficient. *See Sturm v. Davlyn Invs., Inc.*, No. CV 12-07305-DMG (AGRx), 2013 WL 8604760, at *3 (C.D. Cal. Nov. 6, 2013); *see also Lee v. Retail Store Emp. Bldg. Corp.*, No. 15-cv-04768-LHK, 2017 WL 346021, at *7 (N.D. Cal. Jan. 24, 2017) (citing *Sturm*, 2013 WL 8604760, at *3). The line between what constitutes a "psychological consequence" and "emotional injuries" sufficient for constitutional standing may be a difficult one to draw.[3] But this Court finds more applicable to Plaintiffs Brown's alleged injuries of "emotional distress, including humiliation, embarrassment, [and] mental anguish" decisions which have found such injuries to be a sufficient basis for constitutional standing in the FHA context. *See Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1138 (C.D. Cal. 2001) (plaintiff had FHA standing based on "physical and emotional upset that accompanied the stigma" experienced after "witnessing" alleged discriminatory conduct); *Simovits v. Chanticleer Condo. Ass'n*, 933 F. Supp. 1394, 1400 (N.D. Ill. 1996) (determining that plaintiffs had FHA standing in part because of the "emotional distress" they allegedly suffered from discriminatory housing practice); *cf. Lane v. Cole*, 88 F. Supp. 2d 402, 405 (E.D. Pa. 2000) (plaintiffs suffered "anger, fear, mental anguish and emotional distress" as a result of alleged discriminatory housing

---

[3] *See, e.g.*, Rachel Bayefsky, *Psychological Harm and Constitutional Standing*, 81 BROOK. L. REV. 1555 (2016) (discussing treatment of psychological harm as a constitutional injury-in-fact by some courts, and insufficient by others).

practice). Thus, Plaintiff Brown has standing on the basis of these alleged injuries.[4] Plaintiff Brown also "fairly trace[s]", *Lujan*, 504 U.S. at 560, her alleged injuries to Defendants' conduct. She made the requests for reasonable accommodations to Defendants on behalf of her mother and the alleged denials were made to her by Defendants. (FAC ¶¶19–20 (emotional support animal request); *id*. ¶¶21–22, 28–31 (parking spot requests), *id.* ¶¶32–35, 39, 47–50 (request for new unit necessary for live-in caretaker).[5] Defendants made allegedly discriminatory statements about disabled people to Plaintiff Brown. (*Id.* ¶31.) Defendants' alleged denial of the two-bedroom unit as retaliation against Plaintiff Elliott occurred through Plaintiff Brown, who attempted to stop the alleged denial. (*Id.* ¶¶47–50.) Although Plaintiff Brown was not the object of the alleged discrimination, neither was she a mere bystander. The Court concludes that she has met her burden to show that she "sustain[ed] an actual injury from an alleged discriminatory housing practice to commence a suit." *San Pedro Hotel Co.*, 159 F.3d at 475.

---

[4] This Court's determination that Plaintiff Brown's alleged emotional injuries constitute a sufficient injury is in part informed by the recognition that damages claims for emotional distress are available under the FHA. *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1172 (9th Cir. 2013); *Krueger v. Cuomo*, 115 F.3d 487, 492 (7th Cir. 1997); *Banai v. Sec'y of HUD*, 102 F.3d 1203, 1207 (11th Cir. 1997); *see also Ragin v. Harry Macklowe Real Estate Co*., 801 F. Supp. 1213, 1233 (S.D.N.Y. 1992) (regarding individual plaintiffs' claim for compensatory damages for emotional distress caused by discriminatory housing practice: "[d]amages for such an *intangible injury* are compensable under the [FHA]." (emphasis added)), *aff'd in part and rev'd in part*, 6 F.3d 898, 907–08 (2d Cir. 1993) (affirming damages award for emotional distress). The availability of such damages in turn shows that Plaintiff Brown's injuries are likely to be redressed through a favorable court decision.

[5] Defendants challenge whether they, in fact, denied any of these requests, relying on the DFEH's investigative conclusions. (ECF Nos. 47 at 2–3; 65 at 3.) Although the Court acknowledges Defendants' argument, such a challenge is proper in a Rule 56 motion for summary judgment, not a Rule 12(c) motion for judgment on the pleadings.

The Court rejects Defendants' argument that Plaintiff Brown's status as a "visitor" to Defendants' premises or as a caretaker for her mother make her injuries insufficient. Visitors, and even prospective visitors, alleging injury from a discriminatory housing practice have standing to sue those who engage in the practice. *See Moua v. City of Chico*, 324 F. Supp. 2d 1132, 1142 (E.D. Cal. 2004) (plaintiff who did not live at residence had standing to challenge discriminatory practice they allege deterred them from visiting the residence); *Lane*, 88 F. Supp. 2d at 406 ("If it is a discriminatory housing practice to condition rental rights on the exclusion of black guests, it reasonably follows that a black invitee who is excluded or coerced into leaving because of race has been aggrieved or injured by a discriminatory housing practice." (internal quotations and citations omitted)). Because of the broad conferral of standing under the FHA, Plaintiff Brown has alleged a sufficient injury resulting from Defendants' allegedly discriminatory housing practices.[6] Assuming Plaintiff Brown's FHA claims survive a "zone of interests" test, she will ultimately need to prove that Defendants' allegedly discriminatory housing practices caused her to suffer the emotional injuries she alleges before she will be entitled to judicial relief. *See Spann v. Colonial Village, Inc.*, 899 F.2d 24, 29 (D.C. Cir. 1990).

In addition, Plaintiff Brown has an independent ground for standing to assert an FHA claim based on Defendants' allegedly discriminatory statements. Congress may "creat[e] a new legal right 'the invasion of which creates standing.'" *El Dorado Estates v. City of Fillmore*, 765 F.3d 1118, 1122 (9th Cir. 2014) (quoting *Lujan*, 504 U.S. at 578). Section 3604(c) provides that it is unlawful "to make . . . any . . .

---

[6] The Court recognizes that Plaintiff Brown's allegations of injury "may very well be at the outer bounds of the types of injuries that can be addressed by the FHA." *Gonzalez v. Diversified Real Prop. Mgmt. & Bus. Servs., Inc.*, No. SA CV 09-718 PA (RNBx), 2010 WL 10105755, at *3 (C.D. Cal. Jan. 4, 2010). However, she has alleged injuries "related to violations of the FHA," which fall within the liberal standard applicable to FHA standing.

statement . . . with respect to the sale or rental of a dwelling that indicates any preference or limitation, or discrimination based on . . . handicap . . ., or any intention to make any such preference, limitation, or discrimination." 42 U.S.C. §3604(c). Standing under 3604(c) exists even where an individual does not intend to purchase or rent a particular dwelling. *See Ragin v. Harry Macklowe Real Estate Co*., 6 F.3d 898, 903–04 (2d Cir. 1993) ("There is no significant difference between the statutorily recognized injury suffered by the tester in *Havens Realty* and the injury suffered by the [plaintiffs], who were confronted by advertisements indicating a preference based on race."). Plaintiff Brown alleges that Defendants made discriminatory statements to her reflecting a limitation or preference based on handicap. (FAC ¶31.) She has, therefore, alleged a violation of a statutory right sufficient to support her standing to assert this particular FHA claim.

## 2. The FHA and the "Zone of Interests" Test

Defendants' principal challenge to Plaintiff Brown's standing to assert FHA claims arises from *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011), in which the Supreme Court applied the zone of interests test to Title VII. Although Defendants refer to the zone of interests test in terms of standing, the test is not jurisdictional. *See Lexmark*, *Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1387 n.4 (2014); *El Dorado Estates*, 765 F.3d at 1122 ("[W]hether a particular plaintiff has a right to sue under a given substantive statute . . . is more appropriately dealt with not in terms of standing but instead as a matter of statutory interpretation. . ."). Indeed, a court cannot address a zone of interests challenge unless it is satisfied the plaintiff has Article III standing. *Animal Legal Def. Fund v. USDA*, 632 Fed. App'x 905, 908 (9th Cir. 2015). Because this Court has determined that Plaintiff Brown possesses such standing, Defendants' zone of interests challenge is properly resolved on their Rule 12(c) motion for judgment on the pleadings. First, the Court concludes that the zone of interests test applies to FHA claims—a proposition which Plaintiff Brown does not challenge. Second, applying the test here, the Court finds

that some of Plaintiff Brown's claims fall outside the zone of interests protected by the FHA, whereas others are arguably protected.

### a.     The Zone of Interests Test Applies to FHA Claims

The Supreme Court has instructed that the zone of interests test is a "requirement of general application" and "applies to all statutorily created causes of action." *Lexmark*, 134 S. Ct. at 1388. Because of its repeated application by the Supreme Court, "Congress is presumed to 'legislat[e] against the background of' the zone-of-interests limitation . . ." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 163 (1997)). The test denies a right to judicial review of a claim "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987). Whether a plaintiff's interests fall within a statute's zone of interests is determined "not by reference to the overall purpose of the Act in question, but by reference to the particular provision of law upon which the plaintiff relies" and which forms the basis of the complaint. *Bennett*, 520 U.S. at 175–76; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (citing *Clarke*, 479 U.S. at 396–97).

As Defendants recognize, the Supreme Court expressly held that the zone of interests test determines whether a plaintiff may sue under Title VII's "aggrievement" provision for violations of Title VII's substantive provisions. (ECF No. 47 at 7 (citing *Thompson*, 562 U.S. at 176–78).) Like Defendants here, the defendant in *Thompson* asserted that the plaintiff fell outside the applicable zone of interests. Both Title VII and the FHA permit any person "claiming to be aggrieved" by unlawful discriminatory conduct to commence suit. *Compare* 42 U.S.C. §3613(a)(1)(A) *with* 42 U.S.C. §2000e-5(f)(1). *Thompson* is therefore relevant to the applicability of the zone of interests test to the FHA and the Court turns to its analysis.

In *Thompson*, the plaintiff brought suit under Title VII's anti-retaliation provision alleging that, by firing him, the defendant company unlawfully retaliated

against his fiancé who had filed a sex discrimination charge against the company. 562 U.S. at 170. Drawing a parallel between Title VII's aggrievement requirement, 42 U.S.C. §§2000e-5(b), (f)(1), and the APA's aggrievement requirement, 5 U.S.C. §702, the Supreme Court held that Title VII incorporates the zone of interests test. 562 U.S. at 177–78. To reach this conclusion, the Supreme Court "decline[d] to follow" the view that Title VII's aggrievement provision is coextensive with Article III as premised on "ill-considered" "dictum" in *Trafficante*, 409 U.S. at 209, concerning who may sue under the FHA. *Id*. at 176. The Supreme Court observed that "if any person injured in the Article III sense by a Title VII violation could sue, absurd consequences would follow," citing the example of a shareholder suing a company for a racially discriminatory firing of an employee. *Id*. at 176–77. The Supreme Court also rejected as "artificially narrow" the view that Title VII's anti-retaliation provision should be limited to only the employee who engaged in a protected activity. *Id*. at 177. Accordingly, Title VII "enable[s] suit by any plaintiff with an interest arguably sought to be protected by the statute, while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII." 562 U.S. at 178. Importantly, while rejecting as "dictum" language from *Trafficante* on which subsequent FHA standing decisions relied, the Supreme Court cautioned that its holding in *Gladstone* is "compatible with the 'zone of interests' limitation." *Id*. at 176.

Post-*Thompson*, multiple courts split on the impact of the decision on FHA claims. *See Lee*, 2017 WL 346021, at *7 ("Post-*Thompson*, federal courts are split as to whether a plaintiff may establish FHAA standing by simply meeting the minimum requirements set forth under Article III, or whether a statutory standing zone-of-interests test needs to be applied."); *Sturm*, 2013 WL 8604760, at *2 (indicating that *Thompson* "suggest[ed] a narrower standing requirement under the FHAA than Article III standing" but solely examining Article III standing). Courts took varying approaches in analyzing whether and how the zone of interests test

would apply to FHA causes of action. *Compare Cty. of Cook v. Bank of Am. Corp.*, 181 F. Supp. 3d 513, 519 (N.D. Ill. 2015) (declining to apply test to FHA claim after finding that plaintiff had shown an Article III injury sufficient for FHA standing); *City of Los Angeles v. Bank of Am. Corp.*, No. CV 13-9046 PA (AGRx), 2014 WL 2770083, at *8 (C.D. Cal. June 12, 2014) (declining to apply zone of interests test to FHA claims on ground that "the Supreme Court has not yet applied that requirement to the FHA.") *with City of Los Angeles v. JPMorgan Chase & Co.*, No. 2:14-cv-04168-ODW (RZx), 2014 WL 6453808, at *5–6 (C.D. Cal. Nov. 14, 2014) (acknowledging *Thompson*, but "find[ing] that the zone of interests under the FHA is coextensive with Article III standing"); *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1057 (C.D. Cal. 2014) ("Since the Court has already found that the City has adequately alleged Article III standing, the City's alleged injuries fall within the FHA's zone of interests.") *and with Cty. of Cook v. Wells Fargo & Co.*, 115 F. Supp. 3d 909, 917 (N.D. Ill. 2015) (Feinerman, J.) (applying test because "the Supreme Court has explicitly and unequivocally . . . rejected" its "'ill-considered dictum' from *Trafficante* and *Gladstone*.").

Unlike these courts, Defendants' challenge comes in the wake of the Supreme Court's decision in *Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296 (2017), which applied the zone of interests test to the FHA. In the case, the City of Miami sued Bank of America and Wells Fargo for allegedly predatory practices against minority borrowers, which the City alleged caused it to suffer financial harm, including property value and tax base diminutions. *Id.* at 1300. Relying on *Thompson*, the banks argued that the City fell outside the FHA's zone of interests and asserted that "farfetched consequences" would follow if the City could sue because it would mean anyone affected in the local economy could sue so long as they had constitutional standing. *Id.* at 1301, 1304. Cautioning that *Thompson* concerned who may sue under Title VII and not the FHA, *id.* at 1304, the Supreme Court reaffirmed the "presum[ption] that a statute ordinarily provides a cause of

action 'only to plaintiffs whose interests fall within the zone of interests protected by the law invoked,'" *id.* at 1302 (quoting *Lexmark*, 134 S. Ct. at 1387 and n.4). It held that the City's claims of financial injuries resulting from alleged violations of Sections 3604(b) and 3605 fell within the zone of interests arguably protected by the FHA, particularly in light of *Gladstone*, which found that a village had standing under the FHA for similar injuries. *Id.* at 1304–05 (citing *Gladstone*, 41 U.S. at 110–11). Whereas *Lexmark* made clear in principle that every statutory cause of action has a zone of interests which determines who may bring such an action, *Bank of America* applied that principle to the FHA. *Bank of America*, 137 S. Ct. at 1302; *Lexmark*, 134 S. Ct. at 1387. Accordingly, the Court finds that the zone of interests test applies to FHA claims and considers whether Plaintiff Brown's interests fall within the zone of interests that the FHA protects.

### b. Application of the Zone of Interests Test in this Case

Defendants contend that this Court must apply the "zone of interests" test in a manner that precludes from Plaintiff Brown's FHA claims, or "absurd consequences would follow." (ECF No. 47 at 7–8.) If Plaintiff Brown may sue, they argue caregivers, friends, neighbors, or family members could bring suit if they merely knew of an alleged discriminatory housing practice and took issue with it—a result Defendants claim Congress could not have intended when it enacted the FHA. (*Id.*) Relying on *Bank of America*, Plaintiff Brown argues that a plaintiff need not be a target of the alleged discrimination to sue under the FHA, but rather only show "some direct relation between the injury asserted" and the "injurious conduct". (ECF No. 58 at 12–15.) In reply, Defendants further argue that Plaintiff Brown's asserted injuries do not implicate and bear no relation to the interests identified in the FHA or Supreme Court precedent. (ECF No. 65 at 4–6.) Neither party addresses the specific statutory provisions of the FHA which form the basis of Plaintiff Brown's claims— Sections 3604(b), 3604(c), 3604(f)(3)(B), and 3617.

It is clear that the FHA protects an "expan[sive] range of interests." *Lexmark*,

134 S. Ct. at 1388. The FHA expressly codifies that "it is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. §3601. "Courts generously construe the [FHA]" because it is "a broad remedial statute." *City of Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994). Moreover, the Supreme Court has directed that the relevant zone of interests inquiry under the FHA is whether a plaintiff's interests are "arguably protected" by the specific statutory provision at issue. *Bank of America*, 137 S. Ct. at 1301; *see also Bennett*, 520 U.S. at 176. The Supreme Court has clarified that its "conspicuous[]" use of the word "arguably" to describe the inquiry under a particular statute denotes a "lenient approach," with "the benefit of any doubt go[ing] to the plaintiff." *Lexmark*, 134 S. Ct. at 1389. Thus, applying the zone of interests test here, the Court considers whether Plaintiff Brown's interests are "arguably protected" by the specific provisions of the FHA at issue.

First, the Court concludes that Plaintiff Brown's interests fall outside the zone of interests protected by Section 3617. In relevant part, Section 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604 . . . of this title." 42 U.S.C. §3617. Courts broadly apply the provision to reach all practices which have the effect of interfering with the exercise of rights under the FHA, even when no discriminatory housing practice has actually occurred. *See United States v. City of Hayward*, 36 F.3d 832, 835 (9th Cir. 1994); *Smith v. Stechel*, 510 F.2d 1162, 1164 (9th Cir. 1975). The provision protects the interests of persons who allege interference with their rights under the FHA by their landlord, or interference because they encouraged another. The provision arguably protects the interests of persons who, while persons who did not engage in a protected activity, suffered injuries as a result of a defendant's "intended means" of harming a person who has engaged in a protected

activity. *See Thompson*, 562 U.S. at 178 (an employee, while not the object of retaliation, fell within the zone of interests of Title VII's anti-retaliation provision because the employer intentionally terminated him as its chosen means of retaliation); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 866 (9th Cir. 2014) (applying *Thompson* to find zone of interests test under Title IX's analogous anti-retaliation provision is not limited to those who engaged in the protected activity). Here, Plaintiff Brown does not allege that she suffered retaliation by Defendants because she exercised her fair housing rights. She also does not allege that she encouraged her mother to file the DFEH complaint, nor that her alleged injuries were Defendants' "intended means" of harming Plaintiff Elliott. *See Thompson*, 562 U.S. at 178. Accordingly, the Court concludes that Plaintiff Brown's interests fall outside the zone of interests protected by Section 3617 of the FHA and dismisses her claim under that provision.

Second, the Court concludes that Plaintiff Brown's interests fall outside the zone of interests protected by Section 3604(b). Section 3604(b) makes it unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race . . . or national origin." 42 U.S.C. §3604(b). "The FHA was enacted to 'ensure the removal of artificial, arbitrary, and unnecessary barriers when the barriers operates invidiously to discriminate on the basis of impermissible characteristics." *Llanos v. Estate of Coehlo*, 24 F. Supp. 2d 1052, 1056 (E.D. Cal. 1998). It is clear that Section 3604(b) reflects a congressional intent to protect tenants from unlawful discrimination on the basis of race or national origin. Its use of the phrase "any person" also shows that it "arguably protects" persons who are not tenants, but who are subjected to a discriminatory housing practice, such as by being excluded from a residence based on their race. *See Lane*, 88 F. Supp. 2d at 406; *see also Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1104 (9th Cir. 2004) (noting that FHA's use of "any renter or buyer" in Section 3604(f)(1) denotes a narrower

class of persons protected than when the statute uses "any person").  The FAC alleges that "on information and belief, Plaintiffs contend that" Defendants denied Plaintiff Brown's reasonable accommodation request for an emotional support animal for her mother because of Plaintiff Elliott's race and/or national origin.  (FAC ¶¶19–20.) These conclusory allegations are insufficient for the Court to find that Plaintiff Brown's interests are "arguably protected" by Section 3604(b)'s prohibition on race and national origin discrimination in housing.  The FAC contains no allegations from which this Court can reasonably infer that Plaintiff Brown was subjected to discrimination by Defendants on the basis of her race or national origin, or experienced alleged emotional injuries as a result of such discrimination against Plaintiff Elliott.  Under these circumstances, the Court concludes she falls outside the zone of interests protected by Section 3604(b) and dismisses her claim under that provision.

However, the Court concludes that Plaintiff Brown's interests are arguably protected by Section 3604(f)(3)(B).  To properly interpret the zone of interests protected by this provision, the Court finds relevant the FHA's overall statutory provisions concerning disability discrimination, which were added in the Fair Housing Act Amendments of 1988.  *Columbia Pictures Indus. v. Prof'l Real Estate Investors, Inc.*, 866 F.2d 278, 280 n.4 (9th Cir. 1989) ("We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act . . .").  The FHAA prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap."  42 U.S.C. §3604(f)(2).  Further, Section 3604(f)(3)(B) defines unlawful discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C §3604(f)(3)(B).  The purpose of these provisions is "to end the exclusion of persons with handicaps from

the American mainstream." *City of Edmonds*, 18 F.3d at 806. The FHAA identifies persons whose interests are directly protected by its disability discrimination provisions. Its prohibition on disability discrimination encompasses discrimination because of a handicap of a person, any person who resides or will reside in a dwelling, or any person associated with that person. *See* 42 U.S.C. §3604(f)(2)(A)–(C). The "plain language" of this provision "adds classes of individuals who may seek to enforce rights under the provision based on either their own disability *or that of another*." *Smith*, 358 F.3d at 1103 (emphasis added). Although Plaintiff Brown does not allege she has a disability, she alleges that she made multiple reasonable accommodation requests for her mother and engaged in extensive efforts to secure Defendants' approval of them. (FAC ¶¶19–20 (emotional support animal request); *id.* ¶¶21–22, 28–31 (parking spot requests), *id.* ¶¶32–35, 39, 47–50 (request for new unit necessary for live-in caretaker).) She sought to secure fair housing for her mother through the provision of reasonable accommodations to which the FHA gives a disabled individual, like her mother, a right. Given the broad purpose underlying the FHAA's disability discrimination provisions, this Court concludes that Section 3604(f)(3)(B) arguably protects Plaintiff Brown's interests as an individual who sought to effectuate her mother's rights under the provision. Accordingly, the Court denies Defendants' motion as to this claim.

Lastly, the Court finds that Plaintiff Brown's interests directly fall within the zone of interests protected by Section 3604(c). Section 3604(c) prohibits the making of any statement that indicates a preference or limitation based on handicap. 42 U.S.C. §3604(c). Although this provision does not expressly identify a group of persons protected, its "broad language" reflects a congressional intent to prohibit any statements indicating a preference based on handicap in connection with the sale or rental of a dwelling. *See Ragin v. New York Times Co*., 923 F.2d 995, 999 (2d Cir. 1991); *United States v. Hunter*, 459 F.2d 205, 214 (4th Cir. 1972) ("Congress has acted within the bounds of its constitutional power in prohibiting all discriminatory

advertising of any dwelling."). Plaintiff Brown alleges that Defendants made discriminatory statements to her reflecting a preference or limitation based on handicap, which resulted in emotional injuries. (FAC ¶¶31, 52.) Section 3604(c) protects her interests as someone to whom the alleged statements were made and which resulted in injuries. Accordingly, the Court denies Defendants' motion as to Section 3604(c) of the FHA.

### C. Standing Under the California UCRA

The Court next addresses Defendants' argument that Plaintiff Brown lacks standing to assert a claim under the UCRA. Defendants contend that Plaintiff Brown lacks UCRA standing for two reasons: (1) she did not personally suffer the alleged discrimination and (2) she was not a party to a transaction with the Defendants. ((ECF No. 47 at 10.) Plaintiff Brown argues that she has standing under the UCRA due to Defendants' refusal to permit her to use the parking facilities at Civita in order to assist her disabled mother. (ECF No. 58 at 18–19.)

The UCRA entitles all persons within the jurisdiction of California "to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments" regardless of certain characteristics, such as race, national origin, and disability. Cal. Civ. Code. §51(b). "[A]ny person aggrieved" by conduct unlawful under Section 51 may bring a civil suit and "any person denied the rights provided in Section 51" may seek damages for the violation of their rights. Cal. Civ. Code §§52(a), (c). "[T]he [California] legislature has specifically conferred standing to sue under the UCRA upon the victims of the discriminatory practices." *Midpeninsula Citizens for Fair Hous. v. Westwood In*vestors, 271 Cal. Rptr. 99, 104 (Cal. Ct. App. 1990); *Osborne v. Yasmeh*, 205 Cal. Rptr. 3d 659, 667 (Cal. Ct. App. 2016). To possess standing under the UCRA, a plaintiff must allege that her civil rights were personally violated. *Midpeninsula*, 271 Cal. Rptr. at 103. A plaintiff who alleges mere knowledge or awareness of discriminatory conduct lacks standing. *See Surrey v. TrueBeginnings, LLC*, 85 Cal. Rptr. 3d 443, 446 (Cal. Ct. App. 2008);

*see also White v. Square, Inc.*, No. 15-cv-04539-JST, 2016 U.S. Dist. LEXIS 52432, at *12 (N.D. Cal. Apr. 19, 2016).

In light of these principles, the Court finds that Plaintiff Brown has sufficiently alleged that she personally experienced discrimination in violation of the UCRA. It bears noting that Defendants do not challenge Plaintiff Elliott's standing to raise an UCRA claim, which the Court must assume is in part premised on the conduct supporting Plaintiff Brown's UCRA claim. When a person with a disability has standing to sue under the UCRA for discrimination against her, persons associated with her who personally experienced that discrimination also have standing. *See Osborne*, 205 Cal. Rptr. 3d at 669. In opposition to the Defendants' motion, Plaintiff Brown supports her UCRA standing, in relevant part, by pointing to factual allegations that: (1) Defendants allegedly refused to permit her to park Plaintiff Elliott's car in the handicap parking space located at the apartment complex unless Plaintiff Elliott was the driver although her mother could not drive due to her disability, and (2) in refusing a request by Plaintiff Brown for an accommodation to park at a curb near Plaintiff Elliott's apartment, an employee of the Defendants allegedly repeatedly told Plaintiff Brown that she did not care Plaintiff Elliott had a disability and she was unwilling to make any accommodations in parking due to Plaintiff Elliott's disability. (ECF No. 58 at 18–19 (citing FAC ¶¶29–30).) These allegations hardly position Plaintiff Brown as someone who was "merely aware" of or did not personally experience Defendants' allegedly discriminatory conduct. Her allegations are sufficient to support her standing under the UCRA.

In reaching this conclusion, the Court rejects Defendants' argument that Plaintiff Brown lacks UCRA standing because she was not a party to a transaction with the Defendants. Relying on *Surrey*, 85 Cal. Rptr. 3d at 443, Defendants argue that there is a "bright-line rule" for UCRA standing which requires a plaintiff to pay for a defendant's services, which Plaintiff Brown cannot do because she was not a party to Plaintiff Elliott's lease. (ECF No. 47 at 10.) Defendants read *Surrey* too

broadly. The plaintiff in *Surrey* challenged alleged gender price discrimination, although he had not actually paid for the defendant's service. The *Surrey* court "adopt[ed] a bright-line rule that a person must tender the purchase price for a business's services or products in order to have standing to sue it for alleged discriminatory practices *relating thereto*." 85 Cal. Rptr. 3d at 444 (emphasis added). Because the plaintiff did not tender the purchase price for the defendant's services, "[the plaintiff] did not suffer discrimination in any sense other than in the abstract." *Id*. at 447. The subsequent decision in *Osborne v. Yasmeh* expressly cabined *Surrey*'s "bright-line rule." 205 Cal. Rptr. 3d 656 (Cal. Ct. App. 2016). The *Osborne* court reasoned that the *Surrey* rule is inconsistent with the history and legislative intent of the UCRA as well as the prior application of the UCRA to plaintiffs who "were refused services, thereby making a purchase impossible." *Id.* at 669. This Court agrees. *Osborne* reaffirmed that the fundamental inquiry of UCRA standing is whether the plaintiff has alleged she personally experienced the defendant business's alleged discrimination. *Id.* at 668–69 (describing *Midpeninsula* and *Surrey* as involving plaintiff who had not "experienced the denial of full and equal treatment by the defendants in those cases."); *see also Midpeninsula*, 271 Cal. Rptr. at 104. This Court finds *Osborne* persuasive and directly applicable here because the FAC contains no allegation of discriminatory pricing practices. *See Rios v. N.Y. & Co.*, No. 2:17-cv-04676-ODW(AGRx), 2017 U.S. Dist. LEXIS 190794, at *11 (C.D. Cal. Nov. 16, 2017) (finding the *Surrey* rule limited to cases involving allegations of price discrimination in light of *Osborne*).[7]

The Court also rejects Defendants' argument that Plaintiff Brown lacks

---

[7] Prior to *Osborne*, at least one federal court in this Circuit applied the *Surrey* rule to find that a plaintiff lacked standing under the UCRA because he had not tendered payment. *See White*, 2016 U.S. Dist. LEXIS 52432, at *9–10 (finding that the plaintiff "does not cite any authority to support this argument that the rule articulated in *Surrey* . . . applies only in the context of discriminatory pricing claims."). In light of *Osborne*, this Court declines to similarly apply *Surrey*.

standing based on the decision in *Arnold v. United Artists Theatre Circuit, Inc*., 158 F.R.D. 439 (N.D. Cal. 1994). (ECF No. 47 at 10.) The *Arnold* court concluded that companions of individuals with disabilities lacked standing under California Civil Code Section 54.3 to seek damages. *Id.* at 458. Although the court did not expressly refer to Section 54.3 as part of the California Disabled Persons Act ("CDPA"), California courts have made this point clear. *See Munson v. Del Taco, Inc*., 208 P.3d 623, 631 n.8 (Cal. 2009) ("Sections 54 to 55.3 [of the Civil Code] [are] commonly referred to as the 'Disabled Persons Act,' although it has no official title."). The difference between the CDPA and UCRA is important because although the CDPA "substantially overlaps with and complements the UCRA," it is "narrow[er] in focus . . . guarantee[ing] *people with disabilities* equal rights of access . . ." *Jankey v. Lee*, 290 P.3d 187, 190–91 (Cal. 2012) (citing Cal. Civ. Code §§54, 54.1) (emphasis added). Section 54.3 establishes the damages remedy for CDPA violations. *Id.* at 191 (citing Cal. Civ. Code §54.3). If Plaintiff Brown were asserting a CDPA claim, she would lack standing because she is not alleged to be an individual with a disability. *See Reycraft v. Lee*, 99 Cal. Rptr. 3d 746, 755–56 (Cal. Ct. App. 2009) ("Standing under [Section 54.3] is established where a *disabled plaintiff* can show he or she actually presented himself or herself to a business or public place" (emphasis added)). This case, however, concerns standing to seek damages for violations of Section 51. (FAC ¶63.) Plaintiff Brown has standing to sue under that provision. Accordingly, the Court denies Defendants' motion as to the UCRA claim.

### D. Standing for UCL Claim

Finally, the Court considers Defendants' argument that Plaintiff Brown lacks standing to assert a claim under the UCL because the FAC lacks allegations showing that Plaintiff Brown suffered economic injury. The Court agrees.

The UCL prohibits and provides civil remedies for "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200. The California electorate limited private standing under the UCL to "'any person who has suffered

injury in fact and has lost money or property' as a result of unfair competition." Cal. Bus. & Prof. Code §17204. "This statutory limitation requires that a plaintiff show [s]he has suffered losses capable of restitution." *Zeppeiro v. Green Tree Servicing, LLC*, No. 14-01336 MMM (JCx), 2014 WL 12596427, at *10 (C.D. Cal. Oct. 17, 2014) (citation omitted). To have standing, a private plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice . . . that is that gravamen of the claim." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011). Economic injury from unfair competition can be shown in "innumerable ways," such as "(1) surrender[ing] in a transaction more, or acquir[ing] in a transaction less, than he or she otherwise would have; (2) hav[ing] a present or future property interest diminished; (3) be[ing] deprived of money or property to which he or she has a cognizable claim; or (4) be[ing] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id*. at 885–86.

In opposition, Plaintiff Brown argues that a single allegation in the FAC that she and her mother suffered "economic injuries" as a result of Defendants' alleged practices establishes her UCL standing. (ECF No. 58 at 20 (citing FAC ¶52).) The Court does not agree. Plaintiff Brown must set forth factual allegations showing an "individualized loss of money or property in any nontrivial amount." *Kwikset Corp*., 246 P.3d at 887; Cal. Bus. & Prof. Code §17204. Although this Court must assume that general factual allegations embrace those specific facts necessary to support a claim, *see Lujan*, 504 U.S. at 561; *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011), "formulaic recitation" of the elements of a UCL claim, such as a conclusory allegation of "loss of money or property," is insufficient, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court discerns no factual allegations in the FAC showing that Plaintiff Brown lost, or otherwise suffered, a deprivation of her money or property due to Defendants' conduct. Accordingly, the Court grants the

Defendants' motion as to Plaintiff Brown's UCL claim.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **HEREBY GRANTS IN PART AND DENIES IN PART** Defendants' motion and request (ECF Nos. 46–48) as follows:

1. Defendants' request for judicial notice (ECF No. 48) is **GRANTED** as to Exhibits 1–3 and the Notice of Lease Violation (ECF No. 48-3 at 80). The request is otherwise **DENIED**.

2. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff Brown's (1) FHA and FEHA claims related to (a) retaliation and (b) unlawful racial and national origin discrimination, and (2) her UCL claim.

3. Because Defendants solely challenge Plaintiff Brown's standing to assert a negligence claim that is derivative of her statutory claims (ECF No. 47 at 12–13), the claim is **DISMISSED WITHOUT PREJUDICE** only to the extent it is premised on the dismissed claims.

4. The Court **DENIES** Defendants' motion as to Plaintiff Brown's (1) FHA and FEHA claims premised on (a) reasonable accommodations and (b) discriminatory statements, (2) her UCRA claim, and (3) her negligence claim relating to these claims.

**IT IS SO ORDERED**.

**DATED:  December 14, 2017**

Hon. Cynthia Bashant
United States District Judge